**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**BLUEFIELD DIVISION**

| | | |
|---|---|---|
| **MEREDITH YATES,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **Civil Action No. 1:19-00564** |
| | ) | |
| **UNITED STATES OF AMERICA,** *et al.*, | ) | |
| | ) | |
| **Defendants.** | ) | |

## AMENDED PROPOSED FINDINGS AND RECOMMENDATION[1]

Pending before the Court are the following: (1) The United States' "Motion to Dismiss, or in the Alternative, Motion for Summary Judgment" (Document No. 17), filed on March 9, 2020; and (2) Defendants Greenbrier Physicians, Inc. and Wheeler's Motion to Dismiss (Document No. 20), filed on March 13, 2020. The Court notified Plaintiff pursuant to Roseboro v. Garrison, 528 F.2d 304 (4ᵗʰ Cir. 1975), that Plaintiff had the right to file a response the United States and Defendants Greenbrier Physicians and Wheeler's Motions and submit Affidavit(s) or statements and/or other legal or factual material supporting her claims as they are challenged by the Defendants in moving to dismiss. (Document Nos. 19 and 22.) Plaintiff filed her Response in Opposition on October 13, 2020. (Document No. 29.) On October 16, 2020, the United States and Defendants Greenbrier Physicians and Wheeler filed their Replies. (Document Nos. 30 and 31.) Having examined the record and considered the applicable law, the undersigned has concluded that the United States and Defendants Greenbrier Physicians and Wheeler's Motions should be

---

[1] The Amended Proposed Findings and Recommendation is entered for the sole purpose of correcting a clerical error where the Court incorrectly identified the name of a defendant on page 1 of the original Proposed Findings and Recommendation.

granted.

## FACTUAL AND PROCEDURAL HISTORY

On August 2, 2019, Plaintiff, acting *pro se*, filed her Complaint alleging medical negligence and seeking relief pursuant to the Federal Tort Claims Act [FTCA], 28 U.S.C. §§ 1346(b) and 2671, *et seq.* [1] (Document No. 2.) Plaintiff further asserts a State law claim of medical malpractice. (Id.) As Defendants, Plaintiff names the following: (1) United States of America; (2) Greenbrier Physician Inc.; and (3) Dr. Robert Lee Wheeler. (Id.) Plaintiff alleges that prior to her incarceration, she had an Intrauterine Contraceptive Device (IUD) implanted to avoid pregnancy. (Id., p. 3.) Plaintiff states that after incarceration, it was determined that the IUD needed to be removed. (Id.) Plaintiff claims that PA Roberts attempted to remove the IUD, but noticed that the device appeared to be imbedded. (Id.) Plaintiff contends that PA Roberts then requested a consult for Plaintiff to be evaluated by a specialist. (Id.) Plaintiff acknowledges that she was evaluated by an "outside" specialist on September 12, 2017. (Id., p. 4.) Specifically, Plaintiff was evaluated Dr. Robert Wheeler of Greenbrier Physicians, Inc. (Id.) Dr. Wheeler allegedly noted that "the cervix appears multiparous with string broke off." (Id., p. 5.) Plaintiff alleges that Dr. Wheeler "then grasped the base of the IUD and pulled, causing the IUD to facture and only removed a portion of the IUD." (Id.) Plaintiff acknowledges that Dr. Wheeler showed her the portion of the IUD that was remove."(Id.) Plaintiff alleges that Dr. Wheeler then "tried to 'hook' it with the Novak's Curette, but was unsuccessful." (Id.) Plaintiff explains that Dr. Wheeler then "took a Kub, and determined what appeared to be retained fragments." (Id.) Plaintiff states that Dr. Wheeler noted

---

[1]  Because Plaintiff is acting *pro se*, the documents which she has filed in this case are held to a less stringent standard than if they were prepared by a lawyer and therefore, they are construed liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

that "Plaintiff tolerated the procedure well," but Plaintiff asserts "[t]his was not true." (Id.) Plaintiff

contends that she "was in severe pain and crying." (Id.) Plaintiff states that Ms. McAllister, a BOP

employee, was present for the procedure and can testify to the incident. (Id.) Plaintiff states that

Ms. McAllister gave Plaintiff a tissue when Plaintiff was crying due to the severe pain from the

procedure. (Id.) Finally, Plaintiff alleges that Dr. Wheeler "never explained to the Plaintiff that he

was effectively sterilizing her. (Id.) Plaintiff explains that after the string broke, Dr. Wheeler "only

said that it was gong to hurt." (Id.) Plaintiff complains that "[a]t no point did Dr. Wheeler obtain

permission from the Plaintiff to continue the procedure, if there was chance it would result in

sterilization." (Id.) As a result of Dr. Wheeler's action, Plaintiff alleges she "was in so much pain

she had to take two weeks off from her job assignment within the facility." (Id.) Plaintiff claims

that she "felt, and continues to feel, less than human." (Id.) Plaintiff states that she "wanted to have

more children, now she cannot." (Id.) Thus, Plaintiff alleges that she has suffered mental and

psychological damages. (Id.) Plaintiff argues that the "way her medical care was handled by

Greenbrier Physicians, Inc. and Dr. Robert L. Wheeler amounts to medical malpractice." (Id., p.

6.) Plaintiff contends that because she was incarcerated, she had no control over which doctor she

was referred to for treatment or the option to seek a second opinion. (Id., p. 5.) Plaintiff alleges

that she was "forced to see whatever doctors the Federal Bureau of Prisons sent her to see." (Id.)

Plaintiff claims that she was not aware that Dr. Wheeler had four prior malpractice claims against

him, and three were settled out of court. (Id., p. 6.) As relief, Plaintiff requests an award of

monetary damages. (Id.)

 As Exhibits, Plaintiff attaches the following: (1) A copy of Plaintiff's "Claim for Damage,

Injury, or Death" dated August 29, 2018 (Id., pp. 11 - 12.); (2) A copy of the BOP's denial letter

3

dated February 8, 2019, regarding Tort Claim No. TRT-MXR-2019-00562 (Id., p. 14.); (3) A copy of Plaintiff's "Notice of Intent to File Suit" dated May 22, 2019, addressed to Greenbrier Physicians Inc., and Dr. Wheeler (Id., pp. 16 – 19.); and (4) A copy of "Search Detail" results from the West Virginia Board of Medicine regarding Dr. Wheeler (Id., pp. 21 – 22.).

On August 12, 2019, Plaintiff filed her Application to Proceed Without Prepayment of Fees. (Document No. 5.) On January 17, 2020, Plaintiff notified the Court of her release from custody and new address. (Document No. 6.) By Order entered on January 21, 2020, the undersigned directed Plaintiff to file an updated Application to Proceed Without Prepayment of Fees. (Document No. 7.) On February 13, 2020, Plaintiff filed her updated Motion to Proceed Without Prepayment of Fees. (Document No. 9.) By Order entered on February 14, 2020, the undersigned granted Plaintiff's Application to Proceed Without Prepayment of Fees and directed the Clerk to issue process. (Document No. 10.) The Clerk issued process on the same day. (Document Nos. 11 and 12.)

On March 9, 2020, the United States filed its Motion to Dismiss, or in the Alternative, Motion for Summary Judgment and Memorandum in Support. (Document Nos. 17 and 18.) Specifically, the United States argues that Plaintiff's claim should be dismissed based on the following: (1) "Plaintiff's FTCA claim as it pertains to allegations against the BOP staff negligence was not properly exhausted and must be dismissed" (Document No. 18, pp. 8 – 10.); (2) "The independent contractor exception to the FTCA applies to Plaintiff's claim regarding her surgery" (Id., pp. 10 – 14.); (3) "Plaintiff's negligence claim against the United States must be dismissed for failure to comply with the West Virginia Medical Professional Liability Act" (Id., pp. 14 – 19.); and (4) "Plaintiff's negligence claim against the United States is without merit" (Id., pp. 19 -

4

20.) As Exhibits, the United States attaches the following: (1) The Declaration of Dana Renick (Document No. 17-1, pp. 2 – 3.); (2) A copy of Plaintiff's "Public Information Inmate Data As Of 03-04-2020" (Id., pp. 5 – 7.); (3) A copy of Plaintiff's "Claim for Damage, Injury, or Death" dated August 29, 2018 (Id., pp. 9 - 11.); (4) A copy of the BOP's denial letter dated February 8, 2019, regarding Tort Claim No. TRT-MXR-2019-00562 (Id., p. 13.); and (5) A copy of Plaintiff's relevant medical records (Id., pp. 15 – 48.). Notice pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), was issued to Plaintiff on March 10, 2020, advising her of the right to file a response to the United States' Motion to Dismiss, or in the Alternative, Motion for Summary Judgment. (Document No. 19.)

On March 13, 2020, Defendants Greenbrier Physicians, Inc. and Wheeler filed their Motion to Dismiss and Memorandum in Support. (Document Nos. 20 and 21.) The foregoing Defendants argue that Plaintiff's claim should be dismissed because "Plaintiff failed to comply with the mandatory pre-suit requirements of the West Virginia Medical Professional Liability Act" (Id., pp. 4 – 7.) Notice pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), was issued to Plaintiff on March 16, 2020, advising her of the right to file a response to Defendants' Motion to Dismiss. (Document No. 22.)

On October 13, 2020, Plaintiff filed her Response in Opposition to the United States and Defendants' Motions to Dismiss. (Document No. 29.) Both the United States and Defendants filed their Replies on October 16, 2020. (Document Nos. 30 and 31.)

## SUMMARY OF UNDISPUTED FACTS

On June 1, 2017, Plaintiff arrived at FPC Alderson. (Document No. 17-1, p. 2.) During a routine PAP smear conducted on June 16, 2017, Plaintiff informed PA Roberts that she had a

ParaGard IUD and requested that it be removed. (Id., pp. 15 – 17.) Plaintiff indicated to PA Roberts that the IUD had been in place for 15 years. (Id.) PA Roberts attempted to remove the IUD, but it was determined that the IUD could not be removed because it was embedded in the uterus.[2] (Id.) PA Roberts determined that referral to an "outside" OB/GYN was necessary and a consult request was submitted. (Id.) On September 12, 2017, Plaintiff was evaluated and treated by Dr. Robert Wheeler. (Id., pp. 19 – 21.) Dr. Wheeler attempted to remove the embedded IUD by grasping and pulling the strings attached to the IUD, but the strings broke. (Id.) Dr. Wheeler then attempted to grasp and pull the base of the IUD, but the device fragmented resulting in only a portion of the IUD being removed. (Id.) Dr. Wheeler made a final attempt to remove the fractured pieces by using the noak's curette, but this attempt was unsuccessful. (Id.) Dr. Wheeler performed an x-ray, which revealed that two additional fragments remained embedded in Plaintiff's uterus. (Id., p. 24.) Dr. Wheeler noted as follows: "due to the fact the IUD has been in for > 15 years, it has become adherent/embedded into the myometrium and will require anesthesia to be able to remove if in the OR with a hysteroscopy." (Id., p. 21.)

On September 14, 2017, Plaintiff reported to Health Service complaining of abdominal pain and bleeding. (Id., pp. 25 - 27.) Plaintiff was evaluated by PA Roberts, who prescribed pain medication. (Id.) On September 17, 2017, Plaintiff reported to Health Services complaining of abdominal cramping. (Id., pp. 28 – 29.) Plaintiff further advised that she was "getting ready to start

---

[2] ParaGard patient information provides as follows: "ParaGard is indicated for intrauterine contraception for up to 10 years." (Document No. 17-1, pp. 44 – 48.) In the "Warnings" section, it further stated as follows: "Embedment: Partial penetration or embedment of a ParaGard in the myometrium can make removal difficult. In some cases, surgical removal may be necessary." (Id., p. 45.)

[her] period so that doesn't help." (Id.) Plaintiff was advised to take over-the-counter pain medication, use a warm compress, and return to Health Services immediately if she noticed increased bleeding. (Id.) Plaintiff was also provided with an "idle" pass regarding her work assignment. (Id.) On September 22, 2017, Plaintiff again reported to Health Services complaining of abdominal pain and cramping. (Id., pp. 30 – 31.) Plaintiff noted that she was having her period and was have more intense pain and bleeding. (Id.) Plaintiff was evaluated by PA Roberts, who advised Plaintiff to continue the pain medication. (Id.) PA Roberts also extended Plaintiff's "idle" work pass. (Id.)

On December 7, 2017, Dr. Wheeler preformed the recommended surgical procedure (hysteroscopy) to remove the remaining pieces of the IUD. (Id., pp. 34 – 37.) The procedure was performed after Plaintiff signed the consent form. (Id., pp. 32 – 33.) Dr. Wheeler noted that during the hysteroscopy, "there did appear to be a fair amount of scarring which was removed." (Id., p. 36.) No sterilization procedure was conducted, and no complications were noted. (Id., pp. 34 – 37.) Upon return to FPC Alderson, Plaintiff failed to report to any complaints or concerns regarding the above procedure to Health Service or Psychology. (Id., pp. 38 – 43.)

## THE STANDARD

### Motion to Dismiss

#### *Rule 12(b)(1) Motion:*

Federal Courts are Courts of limited jurisdiction that are empowered to consider cases authorized by Article III of the United States Constitution and statutes enacted by Congress. Bender v. Williamsport Area School District, 475 U.S. 534, 541, 106 S.Ct. 1326, 1331, 89 L.Ed.2d 501 (1986). A motion to dismiss filed pursuant to Rule 12(b)(1) raises the question of the federal

court's subject matter jurisdiction. <u>Adams v. Bain</u>, 697 F.2d 1213, 1219 (4th Cir. 1982). Once subject matter jurisdiction is challenged, plaintiff bears the "burden of proving that subject matter jurisdiction exists." <u>Evans v. B.F. Perkins Co.</u>, 166 F.3d 642, 647 (4th Cir. 1999). Subject matter jurisdiction cannot be waived by the Court or the parties. The absence of subject-matter jurisdiction may be raised at any time. <u>Lovern v. Edwards</u>, 190 F.3d 648 (4th Cir. 1999). When considering a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), a District Court may refer to evidence outside the pleadings without converting the proceeding to one for summary judgment. <u>See</u> <u>William v. United States</u>, 50 F.3d 299 (4th Cir. 1995). Unlike a Rule 12(b)(6) motion, "a court asked to dismiss for lack of jurisdiction may resolve factual disputes to determine the proper disposition of the motion." <u>Thigpen v. United States</u>, 800 F.2d 393, 396 (4th Cir. 1986)(overruled on other grounds by, <u>Sheridan v. United States</u>, 487 U.S. 392, 108 S.Ct. 2449, 101 L.Ed.2d 352 (1988)). The Fourth Circuit has explained the standard of review as follows:

> [W]hen a defendant asserts that the complaint fails to allege sufficient facts to support subject matter jurisdiction, the trial court must apply a standard patterned on Rule 12(b)(6) and assume the truthfulness of the facts alleged. On the other hand, when the defendant challenges the veracity of the facts underpinning subject matter jurisdiction, the trial court may go beyond the complaint, conduct evidentiary proceedings, and resolve the disputed jurisdiction facts. And when the jurisdictional facts are inextricably intertwined with those central to the merits, the court should resolve the relevant factual disputes only after appropriate discovery, unless the jurisdictional allegations are clearly immaterial or wholly unsubstantial and frivolous.

<u>Kerns v. United States</u>, 585 F.3d 187, 193 (4th Cir. 2009).

### *Rule 12(b)(6) Motion:*

A Rule 12(b)(6) motion requests dismissal for failure to state a claim upon which relief can be granted and tests the legal sufficiency of the complaint or pleading. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to

relief that is plausible on its face.'" <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)(quoting <u>Bell Atlantic Corporation v. Twombly</u>, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Id.</u> Although factual allegations must be accepted as true for purposes of a motion to dismiss, this principle does not apply to legal conclusions. <u>Id.</u> "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." <u>Id.</u> The "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." <u>Twombly</u>, 550 U.S. at 555, 127 S.Ct. at 1959. Where a *pro se* Complaint can be remedied by an amendment, however, the District Court may not dismiss the Complaint with prejudice, but must permit the amendment. <u>Denton v. Hernandez</u>, 504 U.S. 25, 34, 112 S.Ct. 1728, 1734, 118 L.Ed.2d 340 (1992); <u>also see</u> <u>Goode v. Central Va. Legal Aide Society, Inc.</u>, 807 F.3d 619 (4th Cir. 2015).

**<u>Summary Judgment</u>**

Summary judgment is appropriate under Federal Rule of Civil Procedure 56 when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Once the moving party demonstrates the lack of evidence to support the non-moving party's claims, the non-moving party must go beyond the pleadings and make a sufficient showing of facts presenting a genuine issue for trial. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 - 87, 106 S.Ct.1348, 89 L.Ed.2d 538 (1986). All inferences must be drawn from the underlying facts in the light most favorable to the non-moving party. <u>Matsushita</u>, 475 U.S. at 587, 106 S.Ct. at 1356.

Summary judgment is required when a party fails to make a showing sufficient to establish an essential element of a claim, even if there are genuine factual issues proving other elements of the claim. <u>Celotex</u>, 477 U.S. at 322-23, 106 S.Ct. at 2552-53. Generally speaking, therefore, summary judgment will be granted unless a reasonable jury could return a verdict for the non-moving party on the evidence presented. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If no facts or inferences which can be drawn from the circumstances will support Plaintiff's claims, summary judgment is appropriate.

## DISCUSSION

**1.    FTCA Claim:**

An inmate "can sue under the FTCA to recover damages from the United States Government for personal injuries sustained during confinement in a federal prison, by reason of the negligence of a government employee." <u>United States v. Muniz</u>, 374 U.S. 150, 83 S.Ct. 1850, 10 L.Ed.2d 805 (1963). The FTCA provides at § 2674 as follows:

> The United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances, but shall not be liable for interest prior to judgment or for punitive damages.

The FTCA, however, does not create a new cause of action. <u>Medina v. United States</u>, 259 F.3d 220, 223 (4th Cir. 2001). The statute merely "permits the United States to be held liable in tort in the same respect as a private person would be liable under the law of the place where the act occurred." <u>Id.</u>

**A.    Failure to Exhaust:**

The Prison Litigation Reform Act, 42 U.S.C. § 1997e(a)(1996) requires that inmates exhaust available administrative remedies prior to filing civil actions though the administrative

process may not afford them the relief they might obtain through civil proceedings.[3] Woodford v. Ngo, 548 U.S. 81, 126 S.Ct. 2378, 2382-83, 165 L.Ed.2d 368 (2006); Porter v. Nussle, 534 U.S. 516, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002)(The Prison Litigation Reform Act's exhaustion requirement applies to all inmate suits about prison life whether they involve general circumstances or particular episodes and whether they allege excessive force or some other wrong.); Booth v. Churner, 532 U.S. 731, 121 S.Ct. 1819, 1820,149 L.Ed.2d 958 (2001)("Under 42 U.S.C. § 1997e(a), an inmate seeking only money damages must complete any prison administrative process capable of addressing the inmate's complaint and providing some form of relief, even if the process does not make specific provision for monetary relief."). Exhaustion of administrative remedies is also required when injunctive relief is requested. Goist v. U.S. Bureau of Prisons, 2002 WL 32079467, *4, fn.1 (D.S.C. Sep 25, 2002), aff'd, 54 Fed.Appx. 159 (4th Cir. 2003), cert. denied, 538 U.S. 1047, 123 S.Ct. 2111, 155 L.Ed.2d 1088 (2003). "[A] court may not excuse a failure to exhaust" because the PLRA's mandatory exhaustion scheme "foreclose[es] judicial discretion." Ross v. Blake, ___ U.S. ___, 136 S.Ct. 1850, 1856-57, 195 L.Ed.2d 117 (2016)("[A] court may not excuse a failure to exhaust, even to take [special circumstances] into account."). But the plain language of the statute requires that only "available" administrative remedies be exhausted. Id. at 1855("A prisoner need not exhaust remedies if they are not 'available.'") In Ross v. Blake, the Supreme Court set forth three scenarios where the

---

[3] 42 U.S.C. § 1997e(a) provides as follows:

> No action shall be brought with respect to prison conditions under section 1983 of this title or any other federal law, by a prisoner confined in any jail, prison, or other correction facility until such administrative remedies as are available are exhausted.

11

administrative process is considered "unavailable": (1) The administrative process "operates as a simple dead end -- with officers unable or consistently unwilling to provide any relief to aggrieved inmates;" (2) The administrative process is so opaque that no ordinary prisoner can discern or navigate through the process; and (3) The "administrator thwart inmates from taking advantage of a grievance process through machination, misrepresentation or intimidation." Ross, 136 S.Ct. at 1859-60; also see Dale v. Lappin, 376 F.3d 652, 656 (7th Cir. 2004); Mitchell v. Horn, 318 F.3d 523, 529 (3d Cir. 2003)(inmate lacked available administrative remedies for exhaustion purposes where inmate was unable to file a grievance because prison officials refused to provide him with the necessary grievance forms); Miller v. Norris, 247 F.3d 736, 740 (8th Cir. 2001)(allegations that prison officials failed to respond to his written requests for grievance forms were sufficient to raise an inference that inmate had exhausted his available administrative remedies.)

   If an inmate exhausts administrative remedies with respect to some, but not all, of the claims she raises in a Section 1983, Bivens or FTCA action, the Court must dismiss the unexhausted claims and proceed with the exhausted ones. See Jones v. Bock, 549 U.S. 199, 127 S.Ct. 910, 913, 166 L.Ed.2d 798 (2007)("The PLRA does not require dismissal of the entire complaint when a prisoner has failed to exhaust some, but not all, of the claims included in the complaint. * * * If a complaint contains both good and bad claims, the court proceeds with the good and leaves the bad.") It appears to be the majority view as well that exhausting administrative remedies after a Complaint is filed will not save a case from dismissal. See Neal v. Goord, 267 F.3d 116, 121-22 (2d Cir. 2001)(*overruled on other grounds*), a Section 1983 action, citing numerous cases. The rationale is pragmatic. As the Court stated in Neal, allowing prisoner suits to proceed, so long as the inmate eventually fulfills the exhaustion requirement, undermines Congress' directive to pursue administrative remedies prior to filing a complaint in federal court.

12

Moreover, if during the pendency of a suit, the administrative process were to produce results benefitting plaintiff, the federal court would have wasted its resources adjudicating claims that could have been resolved within the prison grievance system at the outset. Neal, 267 F.3d at 123. In Freeman v. Francis, 196 F.3d 641, 645 (6th Cir. 1999), the Court stated: "The plain language of the statute [§ 1997e(a)] makes exhaustion a precondition to filing an action in federal Court.. . .The prisoner, therefore, may not exhaust administrative remedies during the pendency of the federal suit." Thus, the PLRA requires that available administrative remedies must be exhausted before the filing of a suit in Federal Court. It is further clear that the PLRA does not require that an inmate allege or demonstrate that she has exhausted her administrative remedies. See Jones v. Bock, supra; Anderson v. XYZ Correctional Health Services, 407 F.3d 674, 677 (4th Cir. 2005), *abrogated on other grounds by* Custis v. Davis, 851 F.3d 358 (4th Cir. 2017). Failure to exhaust administrative remedies is an affirmative defense. Prison officials have the burden of proving that the inmate had available remedies which she did not exhaust. Jones v. Bock, supra, 549 U.S. at 216, 127 S.Ct. at 921(Failure to exhaust is an affirmative defense that a defendant must generally plead and prove); also see Dale v. Lappin, 376 F.3d 652, 655 (7th Cir 2004)("Although exhaustion of administrative remedies is a precondition to a federal prisoner filing a Bivens suit, [citations omitted] failure to exhaust is an affirmative defense that the defendants have the burden of pleading and proving." (Citations omitted)) The Court is not precluded, however, from considering at the outset whether an inmate has exhausted administrative remedies. "A court may sua sponte dismiss a complaint when the alleged facts in the complaint, taken as true, prove that the inmate failed to exhaust his administrative remedies." Custis v. Davis, 851 F.3d. 358, 361 (4th Cir. 2017); also see Banks v. Marquez, 694 Fed. Appx. 159 (4th Cir. 2017)(finding no error in the district court's decision to sua sponte dismiss petitioner's petition where petitioner explicitly admitted in his petition that he failed

13

to exhaust his administrative remedies).

As stated above, the FTCA is a limited waiver of sovereign immunity. This waiver is subject to the condition that an administrative claim must first be submitted to the appropriate agency and denied before suit can be filed. See 28 U.S.C. § 2675(a).[4] See also Bellomy v. United States, 888 F. Supp. 760 (S.D.W.Va. 1995). As a general matter, filing a timely administrative claim is jurisdictional and cannot be waived. Ahmed v. United States, 30 F.3d 514, 516 (4th Cir. 1994) (citing Henderson v. United States, 785 F.2d 121, 123 (4th Cir. 1986); Muth v. United States, 1 F.3d 246 (4th Cir. 1993); Gibbs v. United States, 34 F.Supp.2d 405 (S.D.W.Va. 1999). Thus, before an inmate can bring a claim under the FTCA, the inmate must exhaust procedures specified at 28 C.F.R. §§ 14.1 to 14.11 and 543.30 to 543.32. Additionally, the Court cannot hold the case in abeyance while a plaintiff presents an administrative tort claim with the appropriate agency.[5]

---

[4]  Title 28 U.S.C. § 2675(a) provides as follows:

> An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail. The failure of an agency to make final disposition of a claim within six months after it is filed shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim for purposes of this section.

[5]  The administrative process which inmates must exhaust when they have complaints under the FTCA is spelled out at 28 C.F.R. §§ 14.1 - 14.11. To exhaust administrative remedies as required before filing an action under the FTCA, the inmate must first submit an administrative claim including a claim for money damages in a sum certain for the alleged injury sustained on a Standard Form 95 to the Federal agency whose activities gave rise to the claim. Id., § 14.2(a) and (b)(1). After investigation and examination and informal attempts at resolving the inmate's claim as the circumstances may require, Id., §§ 14.6 and 14.8, the agency may deny or approve the inmate's claim. If the agency denies the inmate's claim, she may file suit in the District Court within six months of the mailing of the denial. Id., § 14.9(a). The Director of the Federal Bureau of Prisons is authorized to settle meritorious administrative Federal tort claims by providing

14

See Plyer v. United States, 900 F.2d 41, 42 (4th Cir. 1990)("Since the district court has no jurisdiction at the time the action was filed, it could not obtain jurisdiction by simply not acting on the Motion to Dismiss until the period had expired."). 28 U.S.C. § 2401(b) provides that a tort claim must be presented to the appropriate federal agency within two years after the claim accrues and the lawsuit must be commenced within six months after the receipt of a final agency decision. The purpose of exhaustion is to give agencies an opportunity to settle disputes before defending against litigation in court. See McNeil v. United States, 508 106, 112, fn. 7, 113 S.Ct. 1980, 124 L.Ed.2d 21 (1993).

The United States contends that Plaintiff never filed an administrative tort claim with the agency regarding her claim that BOP staff acted negligently by sending her to an outside physician for removal of her embedded IUD. (Document No. 18, pp. 8 – 10.) The United States argues that "[t]he failure of a plaintiff to exhaust her administrative remedy prior to filing suit deprives this Court of subject matter jurisdiction." (Id., p. 9.) The United States claims that although Plaintiff filed an administrative tort claim with the agency, that claim related only to procedures performed by the outside provider (Dr. Wheeler). (Id.) The United States argues that Plaintiff's administrative tort claim "made no mention of any negligence claims against BOP staff members." (Id.) In support, the United States submits the Declaration of Dana Renick, the Health Service Administrator for FCP Alderson. (Document No. 17-1, pp. 2 - 3.) Ms. Renick declares that in her position she has reviewed Plaintiff's medical records and her administrative tort filing history. (Id., p. 2.) Specifically, Ms. Renick states as follows in her Declaration (Id., p. 4.):

> 5.      Plaintiff has filed an administrative tort claim, but she failed to allege negligence on the part of the United States or its employees. Rather, her

---

monetary compensation. 28 C.F.R. §§ 0.96(k) and 0.172.

15

claim only alleges that Dr. Robert Wheeler was negligent in providing her medical care.

(Id.) As Exhibits, Ms. Renick attaches a copy Plaintiff's "Claim for Damage, Injury, or Death" dated August 29, 2018 (Document No. 17-1, pp. 9 - 11.). Therefore, the United States argues that "Plaintiff has not exhausted any negligence claim regarding medical treatment by BOP employees." (Id.) Plaintiff fails to address the above argument in her Response in Opposition. (Document No. 29.)

Based upon a review of the record, the undersigned finds that Plaintiff failed to properly exhaust her administrative remedies. Although Plaintiff filed an administrative tort claim with the BOP, Plaintiff's claim is completely void of any allegations of negligence by BOP employees. (Document No. 17-1, pp. 9 – 11.) The allegations of negligence and misconduct contained in Plaintiff's administrative tort claim focus exclusively upon conduct by Dr. Wheeler. To exhaust administrative remedies concerning a FTCA claim, the inmate must first submit an administrative claim on a Standard Form 95 to the Federal agency whose activities gave rise to the claim. 28 C.F.R. §§ 14.2(a) and (b)(1). A "claim" is properly presented where a party (1) provides written notice sufficient to cause the agency to investigate the potentially tortious conduct, and (2) requests a "sum certain" in damages. See Ahmed, 30 F.3d at 517; also see Lopez v. United States, 823 F.3d 970, 976 (10th Cir. 2016)(The "claim" must include a written statement "describing the injury in sufficient detail to allow the agency to begin an investigation into the possibility of potentially tortious conduct" and a request for a sum certain.). A party does not need to give the government notice of "every possible theory of recovery." Degenhard, v. United States, 2015 WL 632211, * 1 (E.D.N.C. Feb. 13, 2015). The "claim", however, must give adequate notice to the agency so that the agency can investigate the possibility of potentially tortious conduct. Richland-Lexington

Airport Dist. v. Atlas Properties, Inc., 854 F.Supp. 400 (D.S.C. 1994)("[N]otice must be sufficiently detailed so that the United States can 'evaluate its exposure as far as liability is concerned . . . a claimant must provide a sufficient factual predicate so that his claim can be investigated."); also see Staggs v. United States ex rel. Dept. of Health and Human Services, 425 F.3d 881, 884 (10th Cir. 2005)(same); Smoke Shop, LLC v. United States, 761 F.3d 779, 786 (7th Cir. 2014)(same). Thus, the Court must determine whether Plaintiff's administrative tort claim notified the BOP of the need to investigate specific conduct. In her Complaint, Plaintiff alleges that BOP medical staff acted negligently by referring her to Dr. Wheeler for medical treatment. Although Plaintiff filed an administrative tort claim with the BOP, Plaintiff's administrative tort claim is completely void of any allegations of negligence by BOP employees. (Document No. 17-1, pp. 9 – 11.) The allegations of negligence and misconduct contained in Plaintiff's administrative tort claim focuses exclusively upon alleged misconduct by Dr. Wheeler. The undersigned finds Plaintiff's notice of medical negligence by Dr. Wheeler was not sufficient to put the BOP on notice of Plaintiff's claim that BOP staff acted negligently in referring Plaintiff to Dr. Wheeler. See Barnes v. United States, 707 Fed.Appx. 512, 516 (10th Cir. 2017)(holding that failure to exhaust occurs when the "administrative claim lacks even a cursory mention" of the alleged claim); Glade ex rel. Lundskow v. United States, 692 F.3d 718, 722-23 (7th Cir. 2012)(holding that an administrative claim that alleged wrongdoing by an individual therapist did not administratively present a claim for negligence by the VA); Stevens v. United States, 2019 WL 1386732 (D.N.M. March 27, 2019)(finding that plaintiff failed exhaust where plaintiff's administrative claim merely stated that the automatic door closed while he was a visitor at a postal facility, causing him to fall and suffer injuries, but plaintiff did not state or imply a single claim that the United States Postal

17

Service was negligence); <u>Tuggles v. United States</u>, 2019 WL 954978, * 4 (M.D.N.C. Feb. 27, 2019)(finding plaintiff failed to give the VA proper notice of his negligence claim where his SF-95 only included allegations of wrongdoing by individual security guards and did not include allegations regarding the VA's supervision or training of those guards or that the VA had breach its duty of care); <u>Wilson v. United States</u>, 2018 WL 794711, * 2 (W.D.Ok. Feb. 8, 2018)(Since plaintiff's "administrative claim 'included no mention of any possibility that [his] injuries were caused by negligent training and supervision,' he cannot rely on these theories in support of the instant action."); <u>Abulkhair v. Federal Bureau of Investigation</u>, 2018 WL 772086, * 4 (D.N.J. Feb. 6, 2018)(finding that plaintiff's administrative claim did not sufficiently advise the FBI that plaintiff's injuries were caused by negligence); <u>Rudisill v. United States</u>, 2014 WL 4352114 (E.D.N.C. Sept. 2, 2014)("While an informed consent claim may be included in a medical negligence claim 'by its very nature,' a hospital negligence claim is not. Hospital negligence claims typically involve claims for negligent selection and supervision of physicians."). Accordingly, the undersigned respectfully recommends that Plaintiff's FTCA claim against the United States be dismissed for failure to exhaust.

**B.    Independent Contractor:**

In its Motion, the United States argues that the independent contractor exception applies to Plaintiff's FTCA claim regarding procedures performed by Dr. Wheeler. (Document No. 17 and Document No. 18, pp. 10 – 14.) The United States notes that Plaintiff claims she was subjected to sterilization without her consent and pain and suffering regarding the removal of her embedded IUD. (<u>Id.</u>) The United States, however, states that "Plaintiff's surgery was performed by a community healthcare provider at an outside community medical center." (<u>Id.</u>) Specifically, the

18

surgery was performed by Dr. Wheeler at the Greenbrier Valley Medical Center. (Id.) The United States further argues that "Plaintiff's consent form and operative notes all clearly show the procedure was performed at an outside office." (Id.) The United States contends that "[a] community medical center and its physicians are not under the control of the Bureau of Prisons or the federal government, and there is no evidence that the government exercises any control over the daily work of the medical center or its physicians." (Id.) The United States claims that the "only relationship between the BOP and Dr. Wheeler is the occasional referral of inmates at FPC Alderson to Dr. Wheeler for treatment." (Id.) In support, the United States submits the Declaration of Dana Renick, the Health Service Administrator for FCP Alderson. (Document No. 17-1, pp. 2 - 3.) Specifically, Ms. Renick states as follows in her Declaration:

> 6.    Dr. Robert Wheeler is not an employee of the United States of America.

> 7.    The Green Valley Medical Center is an independent medical service provider that occasionally provides medical services to FPC Alderson inmates as needed. The Greenbrier Medical Center is not owned or operated by the United States of America or any of its employees.

(Id., p. 2.) Based on the foregoing, the United States concludes that "even had Plaintiff's procedure been performed negligently, the United States is not responsible in tort for any alleged negligent act or omission of the outside provider who diagnosed the need for and performed the surgery – after obtaining Plaintiff's consent." (Id.) Plaintiff fails to address the above argument in her Response in Opposition. (Document No. 29.)

An inmate "can sue under the FTCA to recover damages from the United States Government for personal injuries sustained during confinement in a federal prison, by reason of the negligence of a government employee." United States v. Muniz, 374 U.S. 150, 83 S.Ct. 1850, 10 L.Ed.2d 805 (1963). The plain language of the FTCA precludes imputing liability for actions

19

of independent contractors.[6] <u>Wood v. Standard Products Co., Inc.</u>, 671 F.2d 825, 829 (4th Cir.

1982). Thus, the FTCA waives sovereign immunity for certain torts committed by employees of

the United States, but it does ***not*** waive immunity as to the acts of independent contractors. <u>Logue</u>

<u>v. United States</u>, 412 U.S. 521, 527-28, 93 S.Ct. 2215, 37 L.Ed.2d 121 (1973); <u>Robb v. United</u>

<u>States</u>, 80 F.3d 884, 887 (4th Cir. 1996). Whether an individual is a government employee or an

independent contractor is a question of federal law. <u>Logue v. United States</u>, 412 U.S. 521, 528

(1973). The Fourth Circuit has applied a "control test" to physician-contractors, stating: "only

where the Government has the power under the contract to supervise a contractor's 'day-to-day

operations' and 'to control the detailed physical performance of the contractor' can it be said that

the contractor is an employee or agent of the United States within the [FTCA]." <u>Wood</u>, 671 F.2d

at 829, 832; <u>also see</u> <u>United States v. Orleans</u>, 425 U.S. 807, 815, 96 S.Ct. 1971, 48 L.Ed.2d 390

(1976)(The inquiry "is not whether the . . . agency receives federal money and must comply with

federal standards and regulations, but whether its day-to-day operations are supervised by the

Federal Government.") The Fourth Circuit, however, has recognized that "physicians either in

private practice or associated with an organization under contract to provide medical services to

facilities operated by the federal government are independent contractors, and not employees of

the government for FTCA purposes." <u>Robb</u>, 80 F.3d at 887.

In the instant case, it appears undisputed that Dr. Wheeler is not an employee of the United

States and Greenbrier Physicians, Inc. is not owned or operated by the United States. The record

reveals that Plaintiff's surgery was performed by Dr. Wheeler, who is an "outside" or community

---

[6] "The FTCA, as a waiver of sovereign immunity, is strictly construed, and all ambiguities are
resolved in favor of the sovereign." *Robb v. United States*, 80 F.3d 884, 887 (4th Cir. 1996) (citing
*United States v. Nordic Village, Inc.*, 503 U.S. 30, 33 (1992)).

healthcare provider. (Document No. 17-1, pp. 19 – 24, 32 – 37.) Additionally, the surgery was performed by Dr. Wheeler at an "outside" or community medical center. (Id.) The record is void of any allegation or indication that the United States had the power under a contract to supervise Greenbrier Physicians, Inc. or Dr. Wheeler's day-to-day operations or physical performance. Based upon the foregoing, the undersigned finds that Dr. Wheeler and Greenbrier Physicians are private actors independently contracted by the BOP. See Smith v. United States, 2010 WL 256595, * 4 (E.D.Va. Jan. 10, 2010)(finding that doctors employed by a medical practice that contracts with the BOP were independent contractors); Kramer v. United States, 843 F.Supp. 1066 (E.D.Va. 1994)(personnel employed by a private company to provide medical services at a government facility were independent contractors that could not be sued under the FTCA). Accordingly, the undersigned respectfully recommends that the District Court grant the United States' "Motion to Dismiss, or in the Alternative, Motion for Summary Judgment" (Document No. 17). The undersigned finds it unnecessary to consider the remaining arguments the United States has submitted for dismissal of Plaintiff's claim.

**2.**     **Defendants Greenbrier Physicians, Inc. and Dr. Wheeler:**

In the present case, Plaintiff alleges that Greenbrier Physicians and Dr. Wheeler's negligent acts occurred in the State of West Virginia. Accordingly, West Virginia State law applies. Under West Virginia law, a plaintiff must satisfy certain prerequisites prior to filing suit against a health care provider. Specifically, a plaintiff must serve each defendant health care provider with a notice of claim with an attached screening certificate of merit executed under oath by a health care provider qualified as an expert under the West Virginia Rules of Evidence at least thirty (30) days

21

prior to filing suit. W. Va. Code § 55-7B-6.[7] Compliance with West Virginia Code § 55-7B-6 is

mandatory prior to filing suit in federal court. Stanley v. United States, 321 F.Supp.2d 805, 806-

07 (N.D.W.Va. 2004); also see Starns v. United States, 923 F.2d 34 (4th Cir. 1991)(holding that

Virginia's medical malpractice liability cap applies to claims brought against the United States

under the FTCA). West Virginia Code § 55-7B-6(c), however, provides that no screening

certificate of merit is necessary where "the cause of action is based upon a well-established legal

theory of liability which does not require expert testimony supporting a breach of the applicable

standard of care."

    Plaintiff alleges that Dr. Wheeler acted with negligence when removing an IUD, resulting

---

[7]  West Virginia Code § 55-7B-6 provides the following in pertinent part:

> (a) Notwithstanding any other provision of this code, no person may file a medical professional liability action against any health care provider without complying the provisions of this section.

> (b) At least thirty days prior to the filing of a medical professional liability action against a health care provider, the claimant shall serve by certified mail, return receipt requested, a notice of claim on each health care provider the claimant will join in litigation. The notice of claim shall include a statement of the theory or theories of liability upon which a cause of action may be based, and a list of all health care providers and health care facilities to whom notices of claim are being sent, together with a screening certificate of merit. The screening certificate of merit shall be executed under oath by a health care provider qualified as an expert under the West Virginia rules of evidence and shall state with particularity: (1) The expert's familiarity with the applicable standard of care in issue; (2) the expert's qualifications; (3) the expert's opinion as to how the applicable standard of care was breached; and (4) the expert's opinion as to how the breach of the applicable standard of care resulted in injury or death. A separate screening certificate of merit must be provided for each health care provider against whom a claim is asserted. The person signing the screening certificate of merit shall have no financial interest in the underlying claim, but may participate as an expert witness in any judicial proceeding. Nothing in this subsection may be construed to limit the application of Rule 15 of the Rules of Civil Procedure.

in the IUD fracturing and causing sterilization. Plaintiff further argues that Greenbrier Physicians and Dr. Wheeler did not obtain her informed consent before performing the procedure. In their Motion, Defendants Greenbrier Physicians and Dr. Wheeler contend that Plaintiff's claim should be dismissed because she failed to comply with the mandatory pre-suit requirements of the West Virginia Medical Professional Liability Act ("MPLA"). (Document Nos. 20 and 21.) Greenbrier Physicians and Dr. Wheeler acknowledge that Plaintiff provided a Notice of Intent to File Suit. (Id.) Greenbrier Physicians and Dr. Wheeler, however, contend that Plaintiff failed to provide a screening certificate of merit in accordance with W.Va. Code § 55-7B-6(b). (Id.) Greenbrier Physicians and Dr. Wheeler, therefore, argue that Plaintiff's claim must be dismissed. (Id.) In her Response in Opposition, Plaintiff failed to address the above argument. (Document No. 29.) Plaintiff merely argued that "[t]he negligence lies in the doctor's lack of informing the Plaintiff that what he was going to attempt could possibly result in Plaintiff losing the ability to carry a baby to full term." (Id.)

Under West Virginia law, "[i]t is the general rule that in medical malpractice cases, negligence or want of professional skill can be proved only by expert witnesses." Syllabus Point 2, Roberts v. Gale, 149 W.Va. 166, 139 S.Ed.2d 272 (1964). Expert testimony, however, is not required "where the lack of care or want of skill is so gross as to be apparent, or the alleged breach relates to noncomplex matters of diagnosis and treatment within the understanding of lay jurors by resort to common knowledge and experience." Farley v. Shook, 218 W.Va. 680, 629 S.E.2d 739 (2006). The MPLA provides as follows concerning claims "based upon a well-established legal theory of liability":

> Notwithstanding any provision of this code, if a claimant or his or her counsel, believes that no screening certificate of merit is necessary because the cause of

> action is based upon a well-established legal theory of liability which does not require expert testimony supporting a breach of the applicable standard of care, the claimant or his or her counsel, shall file a statement specifically setting forth the basis of the alleged liability of the health care provider in lieu of a screening certificate of merit.

West Virginia Code § 55-7B-6(c). In <u>Johnson v. United States</u>, 394 F.Supp.2d 854, 858 (S.D.W.Va. 2005), the Court held that plaintiff's statement on his administrative claim form alleging improper surgical implantation of a prosthesis satisfied the provisions of the MPLA permitting the filing of a claim without submitting a certificate of merit. <u>Id.</u> The Court reasoned that plaintiff's claim was based upon a well-established legal theory of liability and expert testimony was not required to show a breach of the standard of care because plaintiff stated on his form that the surgeon "implanted the too large Prosthesis backward causing diminished bloodflow and subsequent Necrosis and infection." <u>Id.</u> at 858.

As stated above, Plaintiff does not dispute that she failed to serve Defendants with a screening certificate of merit prior to filing suit. Additionally, the record contains no indication or allegation that Plaintiff has complied with the prerequisites of the MPLA. Plaintiff further does not claim that she has filed a statement in lieu of a screening certificate of merit because her cause of action is based upon a well-established legal theory of liability. To the extent Plaintiff may claim that her case falls within the exception to the screening certificate of merit requirement, the undersigned will consider such. Unlike the facts in <u>Johnson</u>, Plaintiff's allegations of negligence are complex and expert testimony is necessary. <u>See</u> <u>Giambalvo v. United States</u>, 2012 WL 984277 * 4 (N.D.W.Va. March 22, 2012)(finding that *Johnson* "is a rare exception to 'the general rule that in medical malpractice cases negligence or want of professional skill can be proved only by expert witnesses.'"). In the instant case, Plaintiff contends that Dr. Wheeler deviated from the standard

of care by negligently removing an IUD. Plaintiff alleges that due to Dr. Wheeler's negligent conduct, the IUD fractured causing sterilization. Plaintiff further states that Dr. Wheeler did not obtain her informed consent before removing the IUD. The appropriate treatment and standard for care for the removal of an embedded IUD, the cause of a resulting fracture of the IUD, and possible injuries resulting from a fractured IUD, are not within the common knowledge of lay jurors. Plaintiff further contends that Dr. Wheeler failed to obtain her informed consent prior to his attempt to remove the IUD. Although the duty of a physician to obtain informed consent prior to a particular medical procedure may not require expert testimony, the specific information that must be disclosed to a patient regarding a certain medical procedure would require expert testimony because such is not information that is within the common knowledge of lay jurors. See Sayre v. United States, 2009 WL 4825197, * 2 (S.D.W.Va. Dec. 9, 2009)(J. Copenhaver)(finding that the exception to the screening certificate of merit requirement did not apply to an informed consent claim); Cross v. Trapp, 170 W.Va. 459, 294 S.E.2d 446 (1982)("[W]e hold that although expert medical testimony is not required under the patient need standard to establish the scope of a physician's duty to disclose medical information to his or her patient, expert medical testimony would ordinarily be required to establish certain matters including: (1) the risks involved concerning a particular method of treatment, (2) alternative methods of treatment, (3) the risks relating to such alternative methods of treatment, and (4) the results likely to occur if the patient remains untreated."); also see Patterson v. Wylie, 2019 WL 5092636 (W. Va. Oct. 11, 2019)(Affirming the dismissal due to failure to file a screening certificate of merit where plaintiff's complaint asserted a claim of failure to obtain consent and medical negligence based on allegations that she sustained injury as a result of defendant's alleged negligence following his failure to obtain

consent for the procedure.); <u>Adams v. El-Bash</u>, 175, W.Va. 338, S.Ed.2d 381, 385 (1985)(a plaintiff must establish a causal relationship between the physician's failure to disclose information and the damage to the plaintiff). The undersigned, therefore, finds that Plaintiff is not excused from filing a screening certificate of merit pursuant to West Virginia Code § 55-7B-6(c). Accordingly, it is respectfully recommended that the District Court grant Greenbrier Physicians and Dr. Wheeler's Motion to Dismiss (Document No. 20).

## **PROPOSAL AND RECOMMENDATION**

The undersigned therefore respectfully **PROPOSES** that the District Court confirm and accept the foregoing findings and **RECOMMENDS** that the District Court **GRANT** the United States' "Motion to Dismiss, or in the Alternative, Motion for Summary Judgment" (Document No. 17), **GRANT** Defendants Greenbrier Physicians, Inc. and Wheeler's Motion to Dismiss (Document No. 20), and remove this matter from the Court's docket.

The Plaintiff is hereby notified that this "Proposed Findings and Recommendation" is hereby **FILED**, and a copy will be submitted to the Honorable United States District Judge David A. Faber. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rule 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen (14) days (filing of objections) and three (3) days (if received by mail) from the date of filing of this Findings and Recommendation within which to file with the Clerk of this Court specific written objections identifying the portions of the Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted for good cause.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.

Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984). Copies of such objections shall be served on opposing parties, District Judge Faber and this Magistrate Judge.

The Clerk is requested to send a copy of this Proposed Findings and Recommendation to Plaintiff, who is acting *pro se*, and transmit a copy to counsel of record.

Date: December 11, 2020.

Omar J. Aboulhosn
United States Magistrate Judge

27